UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

DWAYNE FAUST,

      Plaintiff,

  -v-                                               14-CV-6702 FPG
                                                                      DECISION AND ORDER
DR. YOUNG JUN, et. al.,

      Defendants.

───────────────────────────────

## I. INTRODUCTION

*Pro se* Plaintiff Dwayne Faust filed this civil rights action pursuant to 42 U.S.C. §§ 1983, 1985 and 1986 against prison officials and medical personnel, alleging they violated his rights under the Eighth Amendment of the United States Constitution. ECF No. 40. Defendants Dr. Young Jun, Dr. Jadow Rao, Dr. Ranee Christopher, Dr. Lesley Germain, Chief Medical Officer Dr. Carl J. Koenigsmann, Deborah Graf, Carol Linsey, Gregg Mohring, Sergeant Kenneth Kyre, Officer Guy Polucci, and Superintendent David Unger, now renew[1] their motion for summary judgment. ECF No. 52. Although the Court granted Plaintiff an extension of time to file a response until May 3, 2017 (*see* ECF No. 57), Plaintiff has not filed any response. For the following reasons, Defendants' motion is GRANTED, and this case is dismissed with prejudice.

## II. BACKGROUND

On January 29, 2013, Plaintiff injured his left knee while incarcerated in the Wyoming Correctional Facility ("Wyoming C.F."). He was seen and treated by Deborah Graf, a Physician Assistant. She noted Plaintiff's left knee was swollen and showed minor abrasions. She

---

[1]     Defendants filed a Motion for Summary Judgment on May 18, 2015 (ECF No. 17) which the Court denied without prejudice (ECF No. 26).

1

administered pain medication, issued crutches, transferred him to Attica Correctional Facility ("Attica C.F.") for further medical treatment and recommended rest. At Attica C.F., Plaintiff's knee was x-rayed, he was given pain medication, issued a brace and told to keep his leg elevated.

On January 31, 2013, Dr. Jadow Rao saw Plaintiff, who was complaining of "extreme pain." ECF No. 40 at 4. Dr. Rao noted the swelling had gone down and cleared Plaintiff to return to Wyoming C.F. Before his transport, Plaintiff's brace was taken from him because it had a piece of metal in it. The following day, Plaintiff was seen by Dr. Young Jun at Wyoming C.F. who noted swelling and cellulitis. Plaintiff returned to Attica C.F., where he was treated until February 7, 2013. During that time, Dr. Rao examined Plaintiff's leg, and prescribed various pain medications and antibiotics. He was sent back to Wyoming C.F. on February 7, 2013 and encouraged to walk. Prior to transport, his mobility aids were again taken from him.

On February 8, 2013, Dr. Jun again noted swelling in Plaintiff's knee and ordered an M.R.I. Plaintiff alleges Dr. Jun failed to address his "complaint that he was unable to walk without severe pain." ECF No. 40 at 5-6. On February 19, 2013,[2] Plaintiff attended sick call and was seen by Carol Linsey, a nurse, who noted Plaintiff, who was in a wheelchair, wanted to see the doctor for a mobility aid. On February 22, 2013, Dr. Ranee Christopher, a radiologist not affiliated with the New York State Department of Corrections and Community Supervision ("DOCCS"), issued an M.R.I report finding "extensive injury to the knee." ECF No. 53-1 at 15.

On Saturday, February 23, 2013,[3] Plaintiff re-injured his knee and requested emergency sick call. Correctional Officer Guy Paolucci denied Plaintiff's request and, as a result, Plaintiff

---

[2] The Amended Complaint states February 18, but medical records indicate it was February 19.

[3] The Amended Complaint states the date was February 22, 2013, but Plaintiff apparently clarified in his deposition that it was Saturday, February 23, 2013. *See* ECF No. 52-6 at 3 n. 1. The Court says "apparently clarified" because although Defendants cite to Plaintiff's deposition transcript throughout their Rule 56 Statement and Memorandum (*see e.g.* ECF No. 52-1 at 1), they have not provided such transcript

waited to attend sick call until February 25, 2013. He was seen by a nurse who noted his left knee and ankle were swollen, and who sent him to Dr. Jun. After reviewing Plaintiff's M.R.I. report, Dr. Jun issued Plaintiff crutches, a knee brace and a sleeve.

The same day, Plaintiff filed a grievance detailing the events from Plaintiff's initial injury. Plaintiff met with Sergeant Kenneth Kyre on March 4, 2013[4] about his grievance. Plaintiff alleges Kyre attempted to coerce him to withdraw the grievance but he refused. Plaintiff's grievance was denied by Superintendent David Unger and his appeal was later denied by the Central Office Review Committee ("CORC").

On March 15, 2013, still suffering from severe pain, Plaintiff went to sick call and was informed he had a torn Anterior Cruciate Ligament ("ACL") and Lateral Collateral Ligament ("LCL") in his left knee. ECF No. 40 at 6. Plaintiff used crutches until he was called back to the infirmary on March 21, 2013 by Dr. Jun and was then issued a wheelchair.

Plaintiff was transferred to Wende Correctional Facility to be seen by Dr. Lesly Germain, an orthopedic surgeon, on April 18, 2013. Dr. Germain noted Plaintiff exhibited drop foot, a condition that causes the front of the foot to drag while walking. On June 11, 2013, Dr. Germain performed anthroscopic surgery to repair Plaintiff's knee. Dr. Jun removed Plaintiff's stitches on June 24, 2013 and Plaintiff was sent for his post-surgery checkup the next day. Plaintiff alleges that his questions about treatment or surgery to repair his drop foot were not addressed at either

---

to the Court. Nevertheless, since Plaintiff does not challenge any portions of Defendants' Statement of Material Facts, the Court accepts the facts as true for purposes of this motion. *See* L. R. Civ. P. 56(a)(2).

[4] Plaintiff's Amended Complaint states the meeting with Kyre was March 9, 2013. ECF No. 40 at 6. Kyre's declaration and written statement regarding Plaintiff's grievance indicate the meeting was March 4. *See* ECF No. 52-3 at 1, 5; ECF No. 52-6 at 5. This minor discrepancy does not affect the outcome of the motion.

appointment. Plaintiff began physical therapy, attending as many as two session per week, from July 2, 2013 through December 31, 2013.

Plaintiff was scheduled for surgery to repair his drop foot with Dr. Germain on September 26, 2013, but the surgery ultimately did not go forward. Plaintiff was fitted for an Ankle Foot Orthosis brace for his foot the same day.

### III. LEGAL STANDARD

Summary judgment is appropriate when the record shows that there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Disputes concerning material facts are genuine where the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In deciding whether genuine issues of material fact exist, the court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of the non-moving party. *Id*. at 255. The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. When the moving party has met this initial responsibility, the non-moving party must come forward with "specific facts showing a genuine issue [of material fact] for trial." Fed. R. Civ. P. 56(e)(2).

If a non-moving party fails to oppose a summary judgment motion, then "summary judgment, if appropriate, shall be entered against" him. Fed. R. Civ. P. 56(e). Indeed, an opposing party may not rely merely on allegations or denials in its own pleading, but must set forth specific facts showing that there is a genuine issue for trial. *Id*. Where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may

not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial." *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001).

## IV. DISCUSSION

"To state a valid claim under 42 U.S.C. § 1983, a plaintiff must allege that the challenged conduct (1) was attributable to a person acting under color of state law, and (2) deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States." *Whalen v. County of Fulton*, 126 F.3d 400, 405 (2d Cir. 1997) (citing *Eagleston v. Guido*, 41 F.3d 865, 875-76 (2d Cir.1994)). A prerequisite for liability under a Section 1983 claim is "personal involvement" by the defendants in the alleged constitutional deprivation. *Spencer v. Doe*, 139 F.3d 107, 112 (2d Cir. 1998).

> A defendant may be 'personally involved' in causing a constitutional deprivation if: (1) defendant participated directly in the alleged infraction; or (2) acting in a supervisory capacity, defendant (a) failed to remedy a continuing or egregious wrong after learning of a violation, (b) created a policy or custom under which the unconstitutional practices occurred or allowed such policy or custom to continue, or (c) was 'grossly negligent' in managing subordinates who actually caused the constitutional deprivation.

*Candelaria v. Coughlin*, 787 F. Supp. 368, 372 (S.D.N.Y. 1992) (citing *Williams v. Smith*, 781 F.2d 319, 323-24 (2d Cir. 1986)).

### A. Scope of Plaintiff's Lawsuit

Defendants assert that Plaintiff has failed to exhaust his administrative remedies as required by The Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a). In relevant part, the PLRA provides that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C.

§ 1997e(a). As such, Defendants argue that the scope of Plaintiff's lawsuit should be limited to the contents of Plaintiff's single filed grievance and further limited in time to the seven-day period Plaintiff was without crutches, or February 19-25, 2013. Defendants contend they are entitled to summary judgment regarding the allegations in Plaintiff's Amended Complaint that address events that occurred after February 25, 2013 because they are not exhausted.

The Court declines to so limit Plaintiff's Amended Complaint. Plaintiff did file a grievance relating to his medical care which he pursued through appeal to the CORC. While the Amended Complaint includes events that transpired after the grievance filing date and includes Defendants not named in Plaintiff's filed grievance, the Court finds it unnecessary to so limit this legal action.

### B. Plaintiff's Medical Claims

Plaintiff's claims against Defendants Christopher, Germain, Graf, Jun, Rao, Linsey and Paolucci all relate to Plaintiff's medical treatment and allege Defendants were deliberately indifferent to Plaintiff's medical conditions. "In order to establish an Eighth Amendment claim arising out of inadequate medical care, a prisoner must prove deliberate indifference to his serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). This standard incorporates both objective and subjective elements. The objective "medical need" element measures the severity of the alleged deprivation, while the subjective "deliberate indifference" element ensures that the defendant prison official acted with a sufficiently culpable state of mind. *Smith v. Carpenter*, 316 F.3d 178, 183–84 (2d Cir. 2003) (citing *Chance v. Armstrong*, 143 F.3d 698, 702 (2d Cir. 1998). "A serious medical condition exists where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Harrison v. Barkley*, 219 F.3d 132, 136-137 (2d Cir. 2000) (quoting *Chance*, 143 F.3d at 702 (internal quotation marks omitted)). Plaintiff must also adequately allege that the prison official or medical

6

personnel had actual knowledge of Plaintiff's serious medical needs, but was deliberately indifferent to those serious needs. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Brock v. Wright*, 315 F.3d 158 (2d Cir. 2003); *Hathaway v. Coughlin*, 37 F.3d 63, 66 (2d Cir. 1994).

1. **Defendants Christopher, Graf and Germain**

Plaintiff alleges that Defendants Christopher, Graf and Germain failed to diagnose and treat his drop foot and denied him surgery to treat his drop foot. ECF No. 40 at 9. Defendants argue they are entitled to summary judgement because Christopher is not state actor, and at best, the allegations against Christopher, Graf and Germain amount to medical malpractice, which is not actionable under Section 1983.

Christopher read Plaintiff's M.R.I. images and submitted a report on February 22, 2013. *See* ECF No. 53-1 at 15. She asserts she was neither a state employee nor working pursuant to a contract with the state. ECF No. 52-6 at 13.[5] However, private doctors who provide medical care to state prison inmates may be subject to liability under Section 1983. *West v. Atkins*, 487 U.S. 42, 55-56 (1988). "It is the physician's function within the state system, not the precise terms of his employment, that determines whether his actions can fairly be attributed to the State in a suit under 42 U.S.C. § 1983." *Id*.

Defendants state, and Plaintiff does not contest, that Plaintiff testified at his deposition that he did not recall any contact with Christopher, and Christopher asserts she never met Plaintiff. ECF No. 52-6 at 12. As such, there are no facts under which a reasonable factfinder could conclude that Christopher is a person acting under color of state law for purposes of 42 U.S.C. § 1983. *See*

---

[5] Defendants refer to the "Christopher Declaration" throughout their Motion for Summary Judgment (ECF Nos. 52-1 at 3; 52-6 at 3, 12-13) but there is no such attachment to their current pleadings. There is, however, a "Christopher Declaration" attached to Defendants' prior Motion for Summary Judgment (*see* ECF No. 17-3), which was denied without prejudice by the Court on February 9, 2016. ECF No. 26.

*Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Zemsky v. City of New York*, 821 F.2d 148, 151 (2d Cir. 1987). Moreover, given her very limited role in Plaintiff's treatments, these allegations fall woefully short of establishing a claim for deliberate indifference against her. Accordingly, summary judgment is granted in Christopher's favor.

Similarly, Defendant Graf is entitled to summary judgment because Plaintiff's allegations fail to establish he "was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). Plaintiff saw Graf only on the date of his initial knee injury, January 29, 2013, at which time she "observed swelling and superficial abrasion." ECF No. 46 at 1-2. Graf issued Plaintiff crutches and pain medication, and transferred him to the Attica C.F. infirmary. ECF No. 40 at 4. On these facts, Plaintiff attempts to allege that Graf was at best negligent for not diagnosing his drop foot at the time of his initial injury. However, negligence, even if it constitutes medical malpractice, does not state a constitutional claim. *See Estelle*, 429 U.S. at 105-06. Accordingly, Graf is entitled to summary judgment.

Germain met with Plaintiff several times, beginning on April 18, 2013 where she discussed with Plaintiff various treatment options for his leg. ECF No. 53-1 at 21.[6] Germain noted Plaintiff's drop foot during this initial consult. *Id.* She recommended and performed anthroscopic surgery to repair Plaintiff's knee on June 11, 2013. Plaintiff alleges that despite noting his drop foot, Germain did nothing to "address the serious medical problem." ECF No. 40 at 7. However, upon her recommendation, electrical studies were conducted to further evaluate the extent of Plaintiff's nerve damage. *See* ECF No. 17-4 at 2; ECF No. 47 at 3. Germain saw Plaintiff again and

---

[6] Again, similar to the "Christopher Declaration," Defendants refer to the "Germain Declaration" throughout their Motion for Summary Judgment (ECF Nos. 52-1 at 7-8; 52-6 at 6-7, 14) but there is no such attachment to their pleadings. There is, however, a "Germain Declaration" attached to Defendants' prior Motion for Summary Judgment (*see* ECF No. 17-4), which was denied without prejudice by the Court on February 9, 2016. ECF No. 26.

8

scheduled surgery for his drop foot for September 26, 2013. According to Germain, after a discussion with Plaintiff that day, Plaintiff ultimately decided to not have surgery and was fitted for a foot brace. ECF No. 52-1 at 8-9. Plaintiff initially alleged that Germain refused to perform the surgery (*id*. 9; ECF No. 40 at 8) but he does not dispute that he was fitted for a foot brace for this condition. *See* ECF No. 40 at p. 8.

Again, Plaintiff's allegations against Germain sound in negligence or medical malpractice. However, "[b]ecause the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith*, 316 F.3d at 184. Moreover, an isolated failure to provide medical treatment, without more, is generally not actionable unless the surrounding circumstances suggest a degree of deliberateness, rather than inadvertence, in the failure to render meaningful treatment. *Gill v. Mooney*, 824 F.2d 192, 196 (2d Cir. 1987). Plaintiff's allegations do not demonstrate that Germain acted with the culpable state of mind to deny him surgery, as even as Plaintiff concedes that he was fitted for an Ankle Foot Orthosis and brace the same day. Disagreement over courses of treatment do not rise to the level of a Constitutional violation. *See Chance*, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."). As such, summary judgment is granted in Germain's favor.

2. **Defendants Rao and Jun**

Plaintiff alleges Rao acted with deliberate indifference when he returned Plaintiff to Wyoming C.F. with the recommendation that Plaintiff walk on his injured leg "despite being aware of edemic [sic] swelling and complaint of severe pain…knowing that [Plaintiff] would suffer extreme pain." ECF No. 40 at 8. Plaintiff further alleges Rao and Jun failed to properly diagnose

9

his drop foot, delayed treatment of his torn ACL and LCL and refused to timely issue mobility aids. ECF No. 40 at 9.

Rao asserts that his advice to Plaintiff that he should walk on his injured knee is good medical advice because, "given the nature of the injury[,] walking is important to prevent ankyloses (stiffness of the joint) which would promote faster recover." ECF No. 52-5 at 2. Rao also states he did not diagnose Plaintiff's drop foot condition because, when he saw Plaintiff "there was no evidence of drop foot [and] Plaintiff did not complain about foot weakness or other factors that would indicate drop foot." ECF No. 52-5 at 1-2. Jun contends that he provided Plaintiff with extensive medical care. *See* ECF No. 52-6 at 25-26.

As discussed *supra*, "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle*, 429 U.S. at 106. Further, to the extent that Plaintiff disagrees with Rao's or Jun's medical decisions, and makes conclusory allegations of their deliberate indifference, such allegations cannot negate Plaintiff's medical records which show extensive, continuing care of Plaintiff's injured leg. *See Wright v. Genovese*, 694 F.Supp.2d 137, 156–57 (N.D.N.Y. 2010) ("Plaintiff's ... conclusory allegations of deliberate indifference do not negate the extensive evidence that [the doctor] and others reasonably and diligently addressed plaintiff's medical needs over an extended period of time.") Accordingly, Rao and Jun are entitled to summary judgment.

3. **Defendant Linsey**

When Plaintiff was transported back to Wyoming C.F. on February 7, 2013, correctional officers allegedly took his crutches and knee brace from him. ECF No. 40 at 5. Plaintiff says he reported this to Linsey, a nurse, who, "despite being made aware of the serious medical situation and of [Plaintiff's] complaint of pain, failed to investigate the matter or take any action" to return

10

his crutches to him. *Id*. Later, on February 19, 2013, Linsey saw Plaintiff during sick call. She noted that Plaintiff was in a wheelchair awaiting an M.R.I., and wanted to see a doctor for a mobility aid. ECF No. 53 at 17. The note states "Plan: MD call out #3." *Id*. Plaintiff was without a mobility aid until February 25, 2013, when Dr. Jun issued him crutches, a knee brace and ankle sleeve. ECF No. 40 at 6.

Plaintiff contends that Linsey acted with deliberate indifference to his serious medical need when she failed to issue him a mobility aid. Linsey claims she did not intentionally deny plaintiff a mobility aid, namely, crutches, nor did she intend to harm him. ECF No. 52-4 at 2. Linsey asserts that when she saw Plaintiff, he was in a wheelchair and she therefore did not see a need to issue him crutches. *Id*. Here, any delay in issuing Plaintiff crutches or other mobility aid, is insufficient to constitute a sufficiently serious deprivation. *See, e.g., Chatin v. Artuz*, 28 F. App'x 9, 10-11 (2d Cir. 2001) (Plaintiff "claims that the medical attention he received at Green Haven Correctional Facility was inadequate because ... a nurse failed to provide him immediately with crutches, ice or pillows.... None of these allegations rises to the level of deliberate indifference to [plaintiff's] serious medical needs."); *Williamson v. Goord*, No. 02–CV–00521, 2006 WL 1977438 at *21 (N.D.N.Y. July 11, 2006) (denial of crutches does not constitute deliberate indifference where it does not lead to death, degeneration, or extreme pain). Accordingly, summary judgment is granted in Linsey's favor.

### 4. Defendant Paolucci

Plaintiff alleges Officer Paolucci denied Plaintiff's emergency sick call after he re-injured his knee on Saturday February 23, 2013, allegedly refusing to call the hospital "unless [Plaintiff] was dying." ECF No. 52-6 at 5. As a result, Plaintiff allegedly spent the weekend in bed and took Motrin (*id*. at 3), and went to sick call Monday morning, February 25, 2013. Paolucci argues he

is entitled to summary judgement because the temporary delay in medical treatment did not worsen Plaintiff's existing injury.

Plaintiff fails to adduce any facts to demonstrate that Paolucci knew of and disregarded an "excessive risk" to Plaintiff's health. *Farmer*, 511 U.S. at 837. Plaintiff does not allege that his injury was exacerbated due to the delay in attending sick call, nor can he refute that he was seen at sick call within two days of his injury. *See Allen v. Ford*, 880 F.Supp.2d 407, 411 (W.D.N.Y. 2012) (finding no medical indifference where the inmate's request for emergency sick call was denied but the inmate was seen at sick call the following day). As such, Paolucci is entitled to summary judgment.

### 5. Defendants Koenigsmann and Mohring

Plaintiff alleges that Dr. Carl Koenigsmann, Chief Medical Officer of DOCCS, failed to "ensure proper training and performance" of medical personnel who treated Plaintiff, and Gregg Mohring, a Nurse Administrator, failed to "properly monitor the nurses under his supervision." ECF No. 40 at 10. Defendants argue that they are entitled to summary judgment because they were not personally involved in any of Plaintiff's medical treatment and the doctrine of *respondeat superior* cannot be applied to them. The Court agrees.

As a prerequisite to establishing a claim against a defendant in a § 1983 action, a plaintiff must allege that a defendant had some personal involvement in the allegedly unlawful conduct. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). It is well-settled that a supervisory defendant must have been personally involved in a constitutional deprivation to be held liable under § 1983. *Farrell v. Burke*, 449 F.3d 470, 484 (2d Cir. 2006). "A plaintiff cannot base liability solely on the defendant's supervisory capacity or the fact that he held the highest position of authority within

the relevant governmental agency or department." *Houghton v. Cardone*, 295 F. Supp. 2d 268, 276 (W.D.N.Y. 2003) (internal quotation and punctuation omitted).

Plaintiff makes no specific allegations about either Defendants' involvement in the complained-of events. Instead, he states only Defendants' titles and responsibilities as Chief Medical Officer and Nurse Administrator, respectively. Without more, this is insufficient to create personal involvement. Accordingly, the Court grants summary judgement in favor of Koenigsmann and Mohring.

### 6. Defendants Kyre and Unger

Plaintiff asserts Sergeant Kyre "intentionally sought to deny [Plaintiff's] First Amendment right to redress the government by use of coercion." ECF No. 40 at 6. Plaintiff allegedly met with Defendant Kyre on March 4, 2013 to discuss his grievance. Plaintiff claims Kyre attempted to coerce Plaintiff to withdraw his grievance and he refused. Kyre denies these allegations and offers in support a statement he wrote on March 9, 2013 regarding the incident. Kyre asserts that Plaintiff, after initially being willing to withdraw the grievance, decided not to because "he thought it would terminate the rest of the grievance." ECF No. 52-3 at 5.

Plaintiff's claim against Kyre fails because there is no constitutional right of access to the established inmate grievance program. *Davis v. Buffardi*, No. 01-CV-0285 (GLS/GJD), 2005 WL 1174088, at *3 (N.D.N.Y. May 4, 2005) ("[p]articipation in an inmate grievance process is not a constitutionally protected right"); *Shell v. Brzezniak*, 365 F. Supp. 2d 362, 369-70 (W.D.N.Y. 2005) ("[i]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim"); *Cancel v. Goord*, No. 00-CV-2042 (LMM), 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("inmate grievance procedures are not required by the Constitution and

therefore a violation of such procedures does not give rise to a claim under § 1983"). Thus, to the extent that Plaintiff alleges that Kyre attempted to impede or interfere with his grievance, he fails to state a claim pursuant to Section 1983 and summary judgment is granted in his favor.

Finally, turning to Plaintiff's claim against Superintendent Unger, the only factual allegation is that he denied Plaintiff's appeal regarding his grievance. Plaintiff asserts that Unger's "denial of Plaintiff's grievance despite being aware of the improper conduct and denial of medical treatment is violative of [Plaintiff's] right to Equal Protection." Unger argues he is entitled to summary judgment because he was not personally involved in the underlying alleged violation. Indeed, there is no personal liability when a superintendent denies a grievance. *See Rogers v. Artus*, No. 13-CV-21 (M), 2013 WL 5175570, at *3 (W.D.N.Y. Sept. 11, 2013) ("The denial, or affirmance of a denial, of a grievance by a Superintendent or other supervisory official is insufficient, without more, to create personal involvement in alleged violations."). Accordingly, Superintendent Unger is entitled to summary judgment.

## V. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment (ECF No. 52) is GRANTED, and this case is DISMISSED WITH PREJUDICE.

The Court hereby certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is denied. *See Coppedge v. United States*, 369 U.S. 438 (1962). Requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

The Clerk of Court is directed to close this case.

IT IS SO ORDERED.

DATED: August 31, 2017
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court